[Civ. No. 11549.   First Appellate District, Division Two.—January 27, 1941.]

C. R. WILLIAMS et al., Respondents, v. MARK A. VENNEMAN et al., Appellants.

J. H. O'Connor, County Counsel, and W. B. McKesson, Deputy County Counsel, for Appellants.

C. H. Scharnikow for Respondents.

SPENCE, J.—Plaintiffs, as residents and taxpayers of the Topanga School District, brought this action against the defendants, as members of the board of trustees of said school district, seeking to have a certain bond election declared void. The trial court entered its findings and judgment in favor of plaintiffs and from said judgment, defendants appeal.

The trial court's findings of fact read in part as follows:

"That upon the day of the election referred to in said complaint the plaintiffs Oka Stewart and Odo B. Stade were struck and beaten at or near the polling place where the same was being held and conducted, and were thereby intimidated by force and violence, and by threats of additional violence, from bringing to the said polling place four qualified voters of said district who desired and intended to and who would have voted against said proposed bond issue; . . .

"That at said election a total of 197 votes were cast, and the proponents of said bond issue polled 132 votes; that except for said force and violence and intimidation so committed as aforesaid the opponents of said bond issue would have polled four additional votes, and would have polled sufficient votes to prevent a two-thirds majority in favor of said bond issue, and would have polled sufficient votes to change the result of said election and to defeat said proposed bond issue."

As conclusions of law from the foregoing facts, the trial court concluded that the election "was unfairly and irregularly held and conducted, and that said irregularity affected the substantial rights of the taxpayers of said Topanga School District, and of the electors voting at said election, and of the plaintiffs" and that plaintiffs were entitled to have said election declared void. Judgment was entered accordingly.

Defendants contend that the evidence was insufficient to support the findings of fact and that said findings were insufficient to support the judgment entered.

We do not believe that defendants are seriously urging the claim that the evidence was insufficient to support the above mentioned findings. The uncontradicted evidence showed a particularly flagrant case of the use of force and violence upon plaintiffs Stewart and Stade and that said plaintiffs were intimidated by said use of force and violence and by threats of the further use thereof from bringing to the polls four qualified voters who would have voted against said bond issue. It is a fair inference from the remarks made by the assailants of said plaintiffs that there previously had been another bond election which had failed; that there was considerable feeling on the part of some of the proponents toward the opponents of the bond issue at the time of the second election; and that there was a deliberate and pre-

meditated plan on the part of at least three men to intimidate said plaintiffs from bringing to the polls voters who were opposed to the bond issue. Said three men voted early and remained in the vicinity of the polling place throughout practically the entire day. They struck plaintiff Stade on one occasion and they struck plaintiff Stewart on two occasions. They were described as "a riotous-looking crowd" and it was testified that "they looked like they were going to start a riot". On one occasion one of them said to plaintiff Stewart, "By God, you and Ray Williams and the rest of the —— —— —— had it your way last time, and we are here to see that you don't do it this time. You get the hell out of here." Plaintiff Stade was struck in the face with great force after he had gotten into his car and was told by his assailant to get out of his car and fight. Another of the men advised him not to get out and stated "You had better get out of here and stay out." While it is true that plaintiffs Stewart and Stade voted at the election and that neither was struck until after he had voted, it seems quite apparent that the purpose of the use of force and of threats upon them was to intimidate them from remaining near or returning to the vicinity of the polling place for any purpose.

Said plaintiffs Stade and Stewart had previously arranged to bring four elderly persons to the polls by automobile. These four persons were opponents of the bond issue and each of the four resided three miles or more from the polling place. They testified that they would have voted against the bond issue but were prevented from doing so by the failure of plaintiffs Stade and Stewart to call for them in the late afternoon as previously arranged. Said plaintiffs testified that they did not bring said four persons to the polling place as arranged because of their fear for the safety of themselves and the safety of any voters that they might bring there. All of the foregoing testimony is uncontradicted and it is conceded that two additional negative votes would have defeated the bond issue. It is therefore apparent that the foregoing findings of fact are amply supported by the evidence.

█ The only debatable question is whether said findings are sufficient to support the judgment. Neither side has brought to our attention any authority directly in point. It is of course of the utmost importance under our form of government that elections should be conducted fairly and with-

out any material interference with the freedom of such elections. The general acceptance of this view is evidenced by the fact that there are comparatively few authorities to be found dealing with the question of the effect of the use of violence and intimidation upon the validity of elections. In reviewing the authorities it is said in McCrary on Elections, 4th Edition, section 550, "If it clearly appears that the fairness, purity or freedom of an election has been materially interfered with by acts of violence, intimidation or armed interference, such election should be set aside. . . . The true rule is this: The violence or intimidation should be shown to have been sufficient either to change the result, or that by reason of it the true result cannot be ascertained with certainty from the returns." (See also Paine on Elections, secs. 467–471; 18 Am. Jur. 336; 20 Cor. Jur. 189 and cases cited.) We find no conflict of authority on the subject but the only cases which have arisen appear to have involved instances where the violence or intimidation was directly applied to the qualified electors who failed to vote. In the present case the violence and intimidation was not directly applied to the four qualified electors who failed to vote but the uncontradicted evidence showed that the violence and intimidation which was applied to plaintiffs was equally effective in accomplishing its intended purpose as though it had been directly applied to said four qualified electors who failed to vote. We are therefore of the view that it requires no unwarranted extension of the salutary principles laid down in said authorities to hold that the above-mentioned findings of the trial court were sufficient to support the judgment declaring said election void. There could be no freedom of elections if the tactics employed in the present case were permitted to succeed and as was said in *Hatfield* v. *Scaggs,* 101 W. Va. 425 [133 S. E. 109], a case involving intimidation, "We agree with the Michigan court that 'The readiest way to stop fraud and corruption at elections is to see to it that the same is not rewarded by success.' " (Citing *Attorney-General* v. *Stillson,* 108 Mich. 419, 423 [66 N. W. 388].)

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.